## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| W.W. GRAINGER, INC. | ) |
| | ) |
|     **Plaintiff and Counterclaim** | ) |
|     **Defendant,** | ) |
| | ) |
| v. | )    **Case No. 23-CV-01690** |
| | ) |
| SCOTT WITZ, | )    **Honorable Sara L. Ellis** |
| | ) |
|     **Defendant and Counterclaim** | ) |
|     **Plaintiff.** | ) |

## DEFENDANT/COUNTERCLAIM PLAINTIFF'S RESPONSE TO PLAINTIFF/COUNTERCLAIM DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

A few of Grainger's directors abused the Board's discretion when they decided on December 14, 2022 to claw back the equity and cash incentive awards Scott Witz had earned in his twenty years at Grainger. Facts showing that the Board's decision was arbitrary, and which therefore preclude summary judgment are:

1. The Board's decision violated the Illinois Human Rights Act;

2. Only three of the Board's twelve directors decided to seek recoupment;

3. The decision-making directors had no knowledge of the facts regarding Witz's alleged violation of law or policy, other than that Witz had been indicted;

4. The Board had never before tried to claw back incentive awards, despite much more egregious violations of law and policy by other executives; and

5. The Board had no reason to believe that any alleged breach of Grainger policy was material, as required by Illinois law.

Grainger now mistakenly relies on Witz's guilty plea, which took place several months after the Board's decision, without much else. However, Illinois law allows Witz to explain the innocent reasons for his actions, and why he pleaded guilty for risk avoidance purposes.

## I. Grainger's Decision To Recoup Witz's Equity Awards Was An Abuse of Discretion

The rushed, illegal decision by members of Grainger's Board of Directors to recoup benefits Witz had earned from his employment was an abuse of the discretion granted by the parties' restricted stock unit agreements. A party vested with contractual discretion must exercise that discretion reasonably and with proper motive, and may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties. *American Fidelity Fire Ins. Co. v. General Ry. Signal Co.*, 184 Ill. App. 3d 601 (1st Dist. 1989); *Eckhardt v. Idea Factory, LLC*, 2021 IL App (1st) 210813.

Several factors show that the Board, when it decided on December 14, 2022 to claw back Witz's compensation, acted arbitrarily, capriciously and with improper motive. On that date, the Board violated the Illinois Human Rights Act by revoking his benefits solely because he had been indicted. Also, Grainger's answers to Witz's interrogatories show that only three directors on Grainger's twelve-member Board knew about the decision or considered it.

Further, the hearsay, speculative evidence submitted without foundation to this Court by Grainger, in the form of a declaration from its chief legal officer, is not competent to show that information available to the Board on December 14, 2022 was sufficient to justify its opportunistic decision to recoup Witz's earned benefits. Additionally, despite previous violations of law and policy by executives, each more serious and more directly affecting Grainger, the Board arbitrarily decided for the first time to claw back benefits, from Witz for an alleged offense tenuously, if at all, connected to Grainger.

2

**A.      Grainger's Decision To Recoup Witz's Benefits Violated The Illinois Human Rights Act**

Grainger's Board members abused their discretion because they resolved to recoup Witz's benefits solely because of his indictment. The Illinois Human Rights Act prohibits discrimination in employment based on arrest record. "Unless otherwise authorized by law, it is a civil rights violation for any employer, employment agency or labor organization to inquire into or to use an arrest record, as defined under subsection (B-5) of Section 1-103, as a basis …to act with respect to … privileges … of employment." 775 ILCS 5/2-103.

The Board made its hurried decision to claw back Witz's awards on December 14, 2022. Joint Statement of Undisputed Facts ¶ 38-39. A declaration from Nancy Berardinelli-Krantz, Grainger's Senior Vice President and Chief Legal Officer, provides the only information before the Court to identify what was presented to the Board at the time of its decision. Berardinelli-Krantz declaration ¶ 12. Her testimony is that the Board's decision was based solely on Witz's indictment:

> I am aware that during the December 14, 2022, Board meeting, the Board was *presented with information indicating that Mr. Witz had been indicted* for, among other things, using his Company-issued laptop to commit various felony offenses, and that such conduct violated the Company's prohibitions on the use of Company-issued electronic devices to store or create any materials that are sexually explicit, obscene, inappropriate, or otherwise unlawful; involved allegations of criminality; and could cause harm to the Company's reputation given the seriousness of the charged crimes and Mr. Witz's tenure and senior role at the Company.

*Id* (emphasis added).

The Human Rights Act would not have prevented the Board from investigating whether or not Witz actually engaged in conduct which might have violated the terms of the Agreements. 775 ILCS 5/2-103(B). But Grainger's evidence indicates that the Board acted on nothing other

3

than it had been "presented with" information that Witz had been indicted for certain alleged offenses. Berardinelli-Krantz declaration, ¶ 12.

Had the Board taken the time to investigate they might have learned that the image which resulted in Witz's subsequent plea agreement was the result of his attempt to protect a young woman whom he considered his daughter, who was suicidal and self-mutilating, and whose mother weaponized the image in order to punish Witz for a relationship turned sour. Declaration of Scott Witz, ¶¶ 2-8, attached as Exhibit A to this memorandum. Witz understandably took the plea deal in order to avoid lengthy incarceration. *Id*, ¶¶ 9, 11. He had not intended to capture any private image of his daughter, or any image which would be considered pornographic. *Id*, ¶ 10.

It should be noted that Grainger's tremendous reliance on Witz's plea agreement is misplaced. First, Witz's guilty plea occurred nine months after the Board's resolution and could not have been considered by the Board. Second, contrary to Grainger's position, the plea, the terms of which are not before the Court, is not dispositive of the issues in this case. Although the record of a guilty plea is admissible in a subsequent civil action against the defendant in the civil case as a judicial admission, the plea is subject to explanation and contradictions, and may be received, weighed, and considered by the jury in connection with all of the other evidence in the case. *Barnes v. Croston*, 108 Ill. App. 2d 182 (1st Dist. 1969). Witz's innocent reason for placing a camera in his troubled daughter's room, and the fact that his guilty plea to a single count was for the purpose of risk avoidance, controvert Grainger's effort to punish him further for his single criminal encounter.

**B.      Grainger Admitted That Only A Fraction Of Its Board Members Considered The Decision To Claw Back Witz's Compensation**

The parties' use of the term "Board" with regard to the decisionmakers in this case is rather generous, considering that no more than one quarter of the Board voted on the resolution to recoup Witz's equity award compensation. Witz suggests that, when viewed with Grainger's other casual treatment of his rights on December 14, 2022, it was an abuse of discretion for only three of Grainger's twelve directors to consider and decide to recoup Witz's compensation.

Grainger's Board of Directors consists of twelve directors. Grainger Investor News Alert, Grainger's Shareholders Elect 12 Directors And Other Annual Meeting Highlights (April 27, 2022), Exhibit 1 to the Declaration of Patrick Gorman, Exhibit B to this memorandum ¶ 3. But evidence from Grainger shows that only three have any knowledge about the decision to claw back Witz's money.

On October 13, 2023, Witz propounded an interrogatory to Grainger, which states in relevant part: "State the names and addresses of all persons known to Plaintiff and Counterclaim Defendant its representatives who have or claim to have or possess knowledge of relevant information, facts or circumstances in this case." Gorman declaration ¶ 4. Grainger's answers to interrogatories, however, indicate that only three directors have knowledge about any facts regarding this dispute. Answer to Interrogatory No. 2, Plaintiff And Counterclaim Defendant's Responses To Defendant And Counterclaim Plaintiff's First Set Of Interrogatories (December 1, 2023), Gorman declaration ¶ 5; Exhibit 2 to Gorman declaration.

A reasonable conclusion is, therefore, that if Grainger truthfully responded to Witz's interrogatories, only one-fourth of the "Board" considered the decision to deprive Witz of his earned compensation, showing a cavalier, arbitrary and capricious attitude toward Witz's rights.

**C.      On December 14, 2022, The Board Lacked Sufficient Information To Decide Whether Witz Had Violated The Law Or A Policy**

The evidence before this Court shows that the Board could not reasonably, with proper motive, have determined on December 14, 2022, whether Witz actually violated the law or a company policy. For the purposes of summary judgment, the Board's decision was based purely on inadmissible hearsay evidence which lacked proper foundation.

The declaration of Berardinelli-Krantz states that "the Board was presented with information" about Witz's indictment. Berardinelli-Krantz declaration, ¶ 12. However, "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *Pryor v. City of Chicago*, 726 F. Supp. 2d 939, 943 (N.D. Ill. 2010). Her statement about a presentation to the Board members is not admissible because it fails to reflect the basic foundation prerequisites for admitting the content of what was said into evidence. *People v. Caffey*, 205 Ill. 2d 52 (Ill. 2001). The evidence fails to demonstrate where the communication to the directors took place, who was present, and who provided information to the directors. *Id*. Without proper foundation the content of the communication was not admissible in evidence, and therefore, not competent to support Grainger's motion.

Had Berardinelli-Krantz laid a proper foundation for the information allegedly told to the Board members, it still cannot be considered here. Declarations in support of summary judgment cannot rely on inadmissible hearsay. *AKW Constr. & Envtl. Servs. v. Galioto*, 2000 U.S. Dist. LEXIS 17962 at *4 (N.D. Ill. Dec. 6, 2000). In *AKW*, summary judgment affidavits lacked a sufficient foundation for admissibility where the plaintiff failed to establish that the affiants had personal knowledge of the matters attested to and it was likely that their knowledge was

6

premised on inadmissible hearsay. *Id.* Rule 802 of the Federal Rules of Evidence states, "Hearsay is not admissible unless any of the following provides otherwise: a federal statute; these rules; or other rules prescribed by the Supreme Court." Hearsay is defined as, "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evidence 801(c).

Further, the hearsay speculation offered by Berardinelli-Krantz's unnamed presenter, that Witz's presumed conduct could cause harm to the Company's reputation, is itself inadmissible testimony about facts not in evidence, and therefore not to be considered in support of summary judgment. *See Naughton v. Sears, Roebuck & Co.*, 2003 U.S. Dist. LEXIS 2331; Fed. R. Civ. Pro. 56(c)(4).

### D. The Board's Clawback Efforts Are Arbitrary And Capricious, After Years Of Waiving More Serious, And More Harmful, Violations Of Law And Policy

The Board's decision to single out Witz for its first ever clawback attempt was arbitrary and capricious because there had been so many previous violations by executives which were worse than whatever Grainger, on December 14, 2022, had reason to believe Witz did.

In the past, the Company chose not to exercise claw back provisions when:

- A former manager had embezzled money and was criminally convicted; Grainger did not attempt any recoupment.

- A former president of a division (and others) violated the Foreign Corrupt Practices Act and were fired for this; Grainger did not attempt any recoupment.

- A former president of a division was fired for installing (stealing) a whole house generator at his home and was given a package, his company computer, and no recoupment.

7

- A former senior vice president was similarly fired for installing (stealing) a whole house generator at his home and was given a package and no recoupment.

- Several former presidents of foreign Grainger businesses were fired for violating the Foreign Corrupt Practices Act; Grainger did not attempt any recoupment of their incentives.

- A former head of a department engaged in significant abuse of company resources and despite being fired for various misconduct was given a multi-million-dollar package and his electronics, and Grainger did not attempt any recoupment.

Witz declaration, ¶ 16. Each of those violations directly affected Grainger. With regard to Witz, the authorities took his used computer, the contents of which no one at Grainger was aware, at least as far as Grainger can show. No reasonable basis exists in the record for Grainger's exercise of its draconian clawback procedure against Witz for the first time.

Historically, incentive-based compensation excess, egregiousness and economic dysfunction led to clawbacks being enshrined in financial reform legislation. Those provisions were enacted to discourage upper level executives from taking imprudent corporate actions to achieve inflated financial results, to the subsequent detriment of shareholders. *See* Bhagat, Elson, *Why Executive Compensation Clawbacks Don't Work*, Harvard Business Review (March 22, 2021). Grainger has not shown that the violations it alleges against Witz could have any effect on its share price.

A party vested with contractual discretion must exercise that discretion reasonably and with proper motive, and may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties. *Dayan v. McDonald's Corp.*, 125 Ill. App. 3d 972 (1st Dist. 1984). Witz had no reason to believe that Grainger would exercise its clawback nuclear

8

option because his ex-girlfriend had weaponized the legal system. Although the record does not

reflect that Grainger knew Witz's innocent reason for his actions, that's really the point;

Grainger's truncated Board made a rushed, knee-jerk decision based only on *some* information

that Witz had been indicted.

The facts before the Court indicate that Grainger's action was likely in bad faith, which

itself signals an abuse of discretion. *Metro East Sanitary Dist. v. Sauget*, 131 Ill. App. 3d 653

(5th Dist. 1985). Where contractual discretion is exercised in bad faith, as opposed to mere

erroneous judgment, the contract is breached. *Id.*

## II. Whether Witz's Alleged Breach Of The Acceptable Use Policy Was Material Is A Question Of Fact Which Precludes Summary Judgment

Whether Witz's alleged breach of Grainger policy was a material breach is a question of

fact. The W.W. Grainger, Inc. 2015 Incentive Plan permitted recoupment for violation of

company policy. Statement of Facts No. 17. Grainger identifies its technology Acceptable Use

Policy as the policy Witz allegedly violated. Statement of Facts No. 7. Grainger states that the

Acceptable Use Policy:

> prohibits employees from using Grainger technology to "[s]tore, access, transfer,
> download, upload, communicate, post, or create any fraudulent, harassing,
> embarrassing, sexually explicit, profane, obscene, intimidating, libelous,
> slanderous, threatening, abusive, defamatory, inappropriate, or otherwise unlawful
> materials" or in a manner that "does not adhere to applicable laws . . .
> jeopardizing the reputation of Grainger and its stakeholders.

*Id.* Illinois contract law provides that a breach must be material in order for the non-breaching

party to non-perform: in this case, to claw back its performance. *Sahadi v. Continental Illinois*

*National Bank & Trust Co. of Chicago*, 706 F.2d 193, 196 (7th Cir. 1983); *William Blair & Co.,*

*LLC v. FI Liquidation Corp.*, 358 Ill. App. 3d 324 (1st Dist. 2005). Whether Witz's alleged

breach of the Acceptable Use Policy was material is a question of fact which precludes summary

9

judgment in this instance. *Commonwealth Edison Co. v. Elston Ave. Props., LLC*, 2017 IL App (1st) 153228.

Illinois courts hold that the determination of whether a breach is material is a complicated question of fact. *William Blair & Co., LLC v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 346-47 (2005); *Sahadi v. Continental Illinois National Bank & Trust Co. of Chicago*, 706 F.2d 193, 196 (7th Cir. 1983).

> In determining whether a breach is material, courts consider: (1) the extent to which the injured party will be deprived of the benefit that he or she reasonably expected; (2) the extent to which the injured party can be adequately compensated for the part of that benefit of which he or she will be deprived; (3) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (4) the likelihood that the party failing to perform or to offer to perform will cure his or her failure, taking account of all the circumstances, including any reasonable assurances; and (5) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Commonwealth Edison Co.*, 2017 IL App (1st) 153228 at *19.

An application of the *Commonwealth Edison* factors to Grainger's claim favor Witz. Grainger has not been deprived of any benefit by Witz's criminal legal problem, because Grainger was not publicly identified as Witz's employer, except by Grainger in this lawsuit. Grainger has not been deprived of any benefit, so it is not entitled to compensation. Grainger is seeking complete and total forfeiture of Witz's benefit of the agreements. There is no need to cure any failure; Witz's criminal case is done, and no harm accrued to Grainger. Finally, the attenuated nature of Witz's alleged violation to Grainger demonstrates that denying Grainger relief is the only result consistent with standards of good faith and fair dealing.

10

### III. Grainger's Tagalong Arguments – The Business Judgment Rule, Breach of Fiduciary Duty Claim And Fraudulent Concealment Claim -- Have No Application

The Court can make quick work of Grainger's three afterthought arguments. The business judgment rule protects corporate directors from individual liability for their diligent, good faith actions. *Stamp v. Touche Ross & Co.*, 263 Ill. App. 3d 1010 (1st Dist. 1993). No one is suing Grainger's directors, so Grainger's reference to the rule makes no sense.

Witz's employment by Grainger ended July 31, 2021. Statement of Facts ¶ 12. Witz never believed he engaged in illegal activity, and the authorities did not pick up Witz's old computer from Grainger until August 12, 2021. Statement of Facts. The record so far contains no facts to show that Witz knew he was the subject of a criminal investigation for another year, when local law enforcement filed a criminal complaint against him. Statement of Facts ¶ 30. Grainger's claim that Witz had a fiduciary duty to disclose actions which he believed were legitimate, if not laudatory, is ridiculous. Further, Witz had no post-employment fiduciary duty to Grainger.

For the same reasons, Grainger's fraudulent concealment claim must fail. Also, Grainger's allegations that Witz caused the company to incur the expense of trying to recover the compensation it paid Witz is a "stop me before I kill again" argument. If Grainger had not abused its discretion and violated the Illinois Human Rights Act in deciding to recoup Witz's hard-earned compensation, it would not be wasting its money on this action.

### CONCLUSION

Considering together all the reasons why the Board of Directors abused its discretion on December 14, 2022, when it opportunistically rushed to reclaim money Witz had earned, suggests that the Court should deny Grainger's motion for summary judgment.

11

Respectfully submitted,


By: s/ *Andrew H. Haber*_____
One of Defendants' Attorneys

Dennis R. Favaro
*dfavaro@favarogorman.com*
Patrick J. Gorman
*pgorman@favarogorman.com*
Andrew H. Haber
*ahaber@favarogorman.com*
Favaro & Gorman, Ltd.
9510 Turnberry Trail
Lakewood, Illinois 60014
(815) 477-1110

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| W. W. GRAINGER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 23-CV-01690 |
| | ) | |
| SCOTT WITZ, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF SCOTT WITZ

I, Scott Witz, hereby state as follows:

1. I am over the age of eighteen years, under no legal disability, and am personally familiar with the matters contained herein; based upon my personal knowledge I could and would testify competently to the facts set forth hereafter.

2. From July, 2011 to August, 2021, I was living with my then-girlfriend of many years and her daughter, whom I considered as my own; unfortunately, the relationship with my then-girlfriend had become volatile and was deteriorating rapidly.

3. The daughter had previously attempted suicide, had self-mutilated, and had been hospitalized for related psychiatric disorders.

4. Solely out of concern for the daughter's safety, I placed a camera in her room in an effort to monitor any dangerous behaviors.

5. That camera captured as an image a private moment which (along with all captured images) was uploaded onto my laptop.

6. It was common for executives with laptops to use such laptops for their personal use.

7. The relationship with my then-girlfriend had significantly deteriorated to the point that, by July 2021, we had decided not to make a move to Austin, Texas, together.

8. Out of hostilities to me, my then-girlfriend effectively weaponized the private image captured on the laptop and facilitated my arrest.

9. Faced with the prospect of an uncertain result at trial which could have resulted in lengthy incarceration, I elected to accept a plea bargain to a lesser charge.

10. I never intended to capture any private image of the daughter and certainly did not intend to create any image that would be construed as pornographic.

11. I consider my plea to simply be a negotiated deal to avoid further problems and I deny any wrongdoing.

12. I was employed by W. W. Grainger, Inc. from March 1, 2001 to July 31, 2021.

13. My most recent position at Grainger was Vice President, Total Rewards, which I served in since 2008.

14. In the position of Vice President, Total Rewards, I was involved in the distribution (and potential recoupment) of cash and equity incentive compensation, which is exactly the subject of the present lawsuit against me.

15. As a consequence of my position, I am familiar with the incentive plans and the circumstances under which a recoupment or claw-back can occur.

16. During my tenure at Grainger, no recoupments or claw backs were exercised, despite circumstances that would have allowed same as identified hereafter.

   o A former manager had embezzled money and was criminally convicted; Grainger did not attempt any recoupment.

   o A former president of a division (and others) violated the Foreign Corrupt Practices Act and were fired for this; Grainger did not attempt any recoupment.

   o A former president of a division was fired for installing (stealing) a whole house generator at his home and was given a package, his company computer, and no recoupment.

   o A former senior vice president was similarly filed for installing (stealing) a whole house generator at his home and was given a package and no recoupment.

   o Several former presidents of foreign Grainger businesses were fired for violating the Foreign Corrupt Practices Act; Grainger did not attempt any recoupment of their incentives.

- ○ A former head of a department engaged in significant abuse of company resources and despite being fired for various misconducts was given a multi-million-dollar package, his electronics and Grainger did not attempt any recoupment.

- ○ I can identify the names and positions of each offender reference above as well as greater detail regarding the circumstances.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed this __11__ day of January, 2024 in _____Austin_____, Texas.

_Scott Witz_

_____

Scott Witz

# Exhibit B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| W.W. GRAINGER, INC. | ) |
| | ) |
|     Plaintiff and Counterclaim | ) |
|     Defendant, | ) |
| | ) |
| v. | )    Case No. 23-CV-01690 |
| | ) |
| SCOTT WITZ, | ) |
| | ) |
|     Defendant and Counterclaim | ) |
|     Plaintiff. | ) |

## DECLARATION OF PATRICK J. GORMAN

I, Patrick J. Gorman, state:

1.    I am a licensed attorney in the State of Illinois, and I represent defendant Scott Witz in the above-captioned case.

2.    I have personal knowledge of the matters stated in this Declaration.

3.    When preparing plaintiff's response to Grainger's motion for summary judgment, I downloaded a Grainger press release from the Internet. *Grainger Investor News Alert, Grainger's Shareholders Elect 12 Directors And Other Annual Meeting Highlights* (April 27, 2022), a copy of which is attached as Exhibit 1 to this Declaration.

4.    On October 13, 2023, I served the attorneys representing the plaintiff in this cause, W.W. Grainger, Inc., with interrogatories and requests for the production of documents.

5.    On December 1, 2023, Grainger's counsel Miriam Petrillo served Plaintiff And Counterclaim Defendant's Responses To Defendant And Counterclaim Plaintiff's First Set Of Interrogatories on me by email. A copy of Grainger's answers to interrogatories are attached as Exhibit 2 to this Declaration.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed this 12 day of January, 2024 in Barrington, Illinois.

Patrick J. Gorman

# Exhibit 1

Grainger.com

Home  **Investor News**  Events & Presentations  Stock Information ⌄  Financials ⌄  Governance ⌄  ESG  Resources ⌄

NEWS DETAILS

NYSE | GWW

# $830.83  + 6.84
+ 0.83%

Volume: 198,949
Market cap: 41.24B

JANUARY 10, 2023 4:00 P.M.
PRICING DELAYED BY 20 MINUTES

VIEW ALL NEWS

## GRAINGER'S SHAREHOLDERS ELECT 12 DIRECTORS AND OTHER ANNUAL MEETING HIGHLIGHTS

APRIL 27, 2022

Download

CHICAGO, April 27, 2022 /PRNewswire/ -- W.W. Grainger, Inc. (NYSE: GWW) held its annual shareholder meeting today. Due to the continuing public health impacts of the COVID-19 pandemic, the meeting was held virtually. Chairman and CEO DG Macpherson provided a company update which included financial and operational highlights from 2021 as well as an update on the Company's ESG program.

Shareholders elected the following 12 directors:

| | |
|---|---|
| Rodney C. Adkins | Beatriz R. Perez |
| V. Ann Hailey | Michael J. Roberts |
| Katherine D. Jaspon | E. Scott Santi |
| Stuart L. Levenick | Susan Slavik Williams |
| DG Macpherson | Lucas E. Watson |
| Neil S. Novich | Steven A. White |

In addition, the shareholders ratified the appointment of Ernst & Young LLP as its independent auditor for the year 2022. Shareholders also voted in favor of the advisory say on pay resolution on executive compensation and approved the W.W. Grainger, Inc. 2022 Incentive Plan.

### About Grainger

W.W. Grainger, Inc., with 2021 sales of $13.0 billion, is a leading broad line distributor with operations primarily in North America, Japan and the United Kingdom. Grainger achieves its purpose, We Keep the World Working®, by serving more than 4.5 million customers worldwide with a wide range of product categories that keep customer operations running and their people safe. The Company also delivers services and solutions, such as technical support and inventory management, to provide tangible value and save customers time and money. Grainger offers more than 2 million maintenance, repair and operating (MRO) products in its High-Touch Solutions assortment and more than 30 million products through its expanding Endless Assortment offering. For more information, visit www.grainger.com.

REQUEST MEETING WITH INVESTOR RELATIONS

View original content:https://www.prnewswire.com/news-releases/graingers-shareholders-elect-12-directors-and-other-annual-meeting-highlights-301534433.html

SOURCE W.W. Grainger, Inc.

VIEW ALL NEWS

## Investor Alerts

News Alert                          Events & Presentations

SEC Filing Alert                    End of Day Stock Quote

Your Email                                              SIGN UP

INVESTOR RELATIONS CONTACTS

**Kyle Bland**                          **Andrew Ansay**
Vice President, Investor Relations      Director, Investor Relations
224-317-1765                            312-260-3537

                                        Email InvestorRelations@grainger.com

COMPANY HEADQUARTERS                    QUICK LINKS

**W.W. Grainger, Inc.**                 **SEC Filings**
100 Grainger Parkway                    **Annual Report**
Lake Forest, IL 60045 - 5201            **Careers**

© 2024 W.W. Grainger, Inc. All Rights Reserved.
Powered By Q4 Inc. 5.113.0.1

REQUEST MEETING WITH INVESTOR RELATIONS

# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

W.W. Grainger, Inc.,

               Plaintiff and Counterclaim
               Defendant,

     v.

Scott Witz,

               Defendant and
               Counterclaim Plaintiff.

Case No. 1:23-cv-01690

Honorable Sara L. Ellis

**PLAINTIFF AND COUNTERCLAIM DEFENDANT'S RESPONSES TO DEFENDANT
AND COUNTERCLAIM PLAINTIFF'S FIRST SET OF INTERROGATORIES**

**PROPOUNDING PARTY:**      **DEFENDANT AND COUNTERCLAIM PLAINTIFF SCOTT WITZ**

**RESPONDING PARTY:**      **PLAINTIFF AND COUNTERCLAIM DEFENDANT W.W. GRAINGER, INC.**

**SET NUMBER:**      **ONE**

Pursuant to Federal Rule of Civil Procedure 33, Plaintiff and Counterclaim Defendant W.W. Grainger, Inc. ("Grainger" or the "Company") responds as follows to Defendant and Counterclaim Plaintiff, Scott Witz's ("Witz" or "Defendant") first set of interrogatories:

**I.    GENERAL RESPONSES.**

1.    Grainger's response to Witz's first set of interrogatories is made to the best of Grainger's present knowledge, information, and belief. Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Grainger's recollection, is subject to such refreshing of recollection, and such additional knowledge of facts, as may result from Grainger's further discovery or investigation. Grainger reserves the right to make any use of, or to introduce at any hearing and at trial, information and/or documents responsive to Witz's first set of interrogatories

1

292780296 v2

but discovered subsequent to the date of this response, including, but not limited to, any such information or documents obtained in discovery herein.

2. To the extent that Grainger responds to Witz's first set interrogatories by stating that Grainger will provide information and/or documents which Grainger or any other party to this litigation deems to embody material that is private, business confidential, proprietary, trade secret, or otherwise protected from disclosure pursuant to Federal Rule of Civil Procedure 26(c)(7), Federal Rule of Evidence 501, or applicable state rule, Grainger will do so only upon the entry of an appropriate protective order against the unauthorized use or disclosure of such information.

3. Grainger reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding in or trial of this or any other action for any purpose whatsoever of Grainger's responses herein and any document or thing identified or provided in response to Defendant's interrogatories.

4. Grainger reserves the right to object on any ground at any time to such other or supplemental interrogatories as Defendant may at any time propound involving or relating to the subject matter of these interrogatories.

## II. GENERAL OBJECTIONS.

Grainger makes the following general objections, whether or not separately set forth in response to each interrogatory, to each instruction, definition, and interrogatory made in Defendant's first set of interrogatories:

1. Grainger objects generally to the interrogatories insofar as any such interrogatory seeks information or production of documents protected by the attorney-client privilege or the work product doctrine. Such information or documents shall not be provided in response to Defendant's first set of interrogatories and any inadvertent disclosure or production thereof shall not be deemed a waiver of any privilege with respect to such information or documents or of any work product immunity which may attach thereto.

2

2.      Grainger objects to all definitions, instructions, and interrogatories in which the phrase "relate to" or "relating to" appears. The terms "relate to" and "relating to" are overly broad, vague, ambiguous, and unintelligible, require subjective judgment on the part of Grainger and its attorneys, and would require a conclusion or opinion of counsel in violation of the attorney work product doctrine.

3.      Grainger objects to each interrogatory which seeks to require Grainger to identify or list each document "that supports" any given factual assertion on the ground that any response thereto would require subjective judgment on the part of Grainger and its attorneys and would further require disclosure of a conclusion or opinion of counsel in violation of the attorney work product opinion.

4.      Grainger objects to any interrogatory that is continuing in nature, on the ground that said instruction seeks unilaterally to impose an obligation to provide supplemental information greater than that required by Federal Rule of Civil Procedure 26(e) and would subject Grainger to unreasonable and undue annoyance, oppression, burden, and expense. Grainger will comply with the requirements of the Federal Rules of Civil Procedure and is willing to discuss mutually acceptable reciprocal obligations of Defendant for continuing discovery.

5.      Grainger objects to any interrogatory to the extent it seeks to require Grainger to search for information about documents no longer in existence or in Grainger's possession, custody or control, on the grounds that said instruction is overly broad, would subject Grainger to undue annoyance, oppression, burden and expense, and seeks to impose upon Grainger an obligation to investigate information or materials from third parties or services who are equally accessible to Defendant.

6.      Grainger objects to any interrogatory to the extent it seeks to require Grainger to identify anything other than the specific claim or privilege or work product being made and the basis for such claim, on the ground that the additional information sought by Defendant would subject Grainger to unreasonable and undue annoyance, oppression, burden, and expense, and constitutes information protected from discovery by privilege and as work product.

3

### III.    SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES.

Without waiving or limiting in any manner any of the foregoing General Objections, but rather incorporating them into each of the following responses to the extent applicable, Grainger responds to the specific interrogatories in Defendant's first set of interrogatories as follows:

### INTERROGATORY NO. 1:

Please state the name, address and job title of the person(s) answering these Interrogatories and whether or not the person(s) has knowledge of the allegations contained within Plaintiff's Complaint and Counterclaim Defendant's Counterclaim.

### RESPONSE TO INTERROGATORY NO. 1:

Plaintiff objects to this request as not reasonably calculated to lead to discoverable evidence, and to the extent it calls for a response subject to the attorney-client privilege. Subject to and without waiving these objections, these interrogatories were prepared by counsel with the assistance of various parties employed by Plaintiff, including in its legal department and the persons with knowledge identified below in response to Interrogatory No. 2.

### INTERROGATORY NO. 2:

State the names and addresses of all persons known to Plaintiff and Counterclaim Defendant its representatives who have or claim to have or possess knowledge of relevant information, facts or circumstances in this case. To each, set forth:

    a.    Employer and current job title;

    b.    If employed by the Plaintiff and Counterclaim Defendant in this action, please state the starting dates of employment;

    c.    The substance of the knowledge of relevant information, facts or circumstances;

    d.    Whether a written or oral statement was given by said witness;

    e.    If so, to whom the statement was given;

    f.    The date the statement was given;

    g.    Identify the individual who has possession of a copy of said statement; and

    h.    Set forth the substance of the statement, or in the alternative, attach a copy of the

4

statement to your answers.

**RESPONSE TO INTERROGATORY NO. 2:**

Grainger objects to this Interrogatory to the extent that it seeks information protected by

the attorney-client privilege or work product doctrines. Subject to this objection, see as follows:

a. Scott Witz, former Grainger executive. Mr. Witz has knowledge regarding the allegations and defenses contained in the Complaint and Counterclaim.

b. Nancy Berardinelli-Krantz, Senior Vice President and Chief Legal Officer, Grainger. Ms. Berardinelli-Krantz has knowledge regarding the Grainger's Board of Director's efforts to seek recoupment of Witz's incentive compensation. Aside from Ms. Berardinelli-Krantz's Declaration in support of Grainger's Motion for Summary Judgment, no written statement exists.

c. DG Macpherson, Grainger Board member. Mr. Macpherson has knowledge and information regarding the allegations against Witz and the Board's efforts to seek recoupment of Witz's incentive compensation. No written statement exists.

d. Rodney Atkins, Grainger Board member. Mr. Atkins has knowledge and information regarding the allegations against Witz and the Board's efforts to seek recoupment of Witz's incentive compensation. No written statement exists.

e. Stuart Levenick, Grainger Board member. Mr. Levenick has knowledge and information regarding the allegations against Witz and the Board's efforts to seek recoupment of Witz's incentive compensation. No written statement exists.

**INTERROGATORY NO. 3:**

With regard to Interrogatory No. 2, identify and produce any documents relating to this

person's knowledge of any issue present in this case, including any documents which the person

could testify, and with respect to each document, state its relationship to any issue present in this

case.

**RESPONSE TO INTERROGATORY NO. 3:**

Grainger objects to this Interrogatory to the extent that it seeks information or

communications protected by the attorney-client privilege or work product doctrines. Subject to

this objection, see documents produced in response to Defendant's Requests for Production,

including the Company's Acceptable Use Policy, the December 14, 2022 Board Resolution, the

W.W. Grainger, Inc. 2015 Incentive Plan and applicable Award Agreements, and Scott Witz Plan

5

292780296 v2

Activity Report, dated July 11, 2023. Each document's relationship to the issues present in this case are explained in detail in the Joint Statement of Facts submitted with Grainger's Motion for Summary Judgment.

**INTERROGATORY NO. 4:**

Does Plaintiff and Counterclaim Defendant have any statements from any person relating to the allegations made in Plaintiff's Complaint and Counterclaim Plaintiff's Counterclaim? If so, identify each such person, state whether each such statement was written or oral, the date of said statement, identify the document or summarize the oral communication constituting each statement, and identify who has possession of such statement.

**RESPONSE TO INTERROGATORY NO. 4:**

Grainger objects to this Interrogatory to the extent that it seeks information or communications protected by the attorney-client privilege or work product doctrines. Subject to this objection, Grainger maintains that any such responsive documents, including police reports, related witness statements and Ms. Berardinelli-Krantz's Declaration, are already in Defendant's possession, custody or control.

**INTERROGATORY NO. 5:**

Was any investigation conducted regarding the allegations contained in Plaintiff's Complaint and Counterclaim Defendant's Counterclaim? If your answer is yes, please identify who conducted the investigation and describe what action took place during the investigation and produce copies of all documents generated during and as a result of the investigation.

**RESPONSE TO INTERROGATORY NO. 5:**

Grainger objects to this Interrogatory to the extent that it seeks information or communications protected by the attorney-client privilege or work product doctrines. Subject to this objection, Grainger assisted local law enforcement with its investigation into Defendant's criminal activity. Grainger maintains that any such responsive documents, including police reports and related witness statements, and the December 14, 2022 Board Resolution are already in Defendant's possession, custody or control.

292780296 v2

**INTERROGATORY NO. 6:**

Identify all communications between Plaintiff and Counterclaim Defendant and Defendant and Counterclaim Plaintiff regarding the award or distribution of the incentive monies referenced in the Complaint. For each communication, identify the date of the communication, the name of the individuals participating the communication, the form of the communication and the content of the communication.

**RESPONSE TO INTERROGATORY NO. 6:**

Grainger objects to this Interrogatory on the grounds that the information requested is already in Defendant's possession, custody or control.

**INTERROGATORY NO. 7:**

Identify all communications between Plaintiff and Counterclaim Defendant and Defendant and Counterclaim Plaintiff regarding the subject matter of the Complaint and Counterclaim. For each such communication, identify the date of the communication, the names of the individuals participating in the communication, the form of the communication and the content of the communication.

**RESPONSE TO INTERROGATORY NO. 7:**

Grainger objects to this Interrogatory on the grounds that the information requested is already in Defendant's possession, custody or control. Subject to this objection, see Grainger's December 15, 2022, Demand Letter to Scott Witz and Grainger's February 10, 2023 follow up correspondence to Witz's counsel.

**INTERROGATORY NO. 8:**

For each of Counterclaim Defendant's denials of the allegations in the Counterclaim, state all facts that support the denial, identify all persons who have knowledge of the facts that support the denial, and all documents which relate to or support the denial.

**RESPONSE TO INTERROGATORY NO. 8:**

Grainger objects to this Interrogatory on the grounds that it seeks information already in Defendant's possession, custody and control by means of Grainger's Motion to Dismiss Count I

7

of Defendant's Counterclaim and Grainger's Motion for Summary Judgment and attendant Joint Statement of Facts. Grainger further objects to this Interrogatory to the extent that it seeks information or communications protected by the attorney-client privilege or work product doctrines.

**INTERROGATORY NO. 9:**

Identify all employees who received incentive compensation (distribution) from Plaintiff Counterclaim Defendant subject to cancellation and/or recoupment, and for each individual, identify:

a.      Each year distributions were received;

b.      The amount of distributions each year;

c.      The Plan, contract, award or other documents governing the distribution;

d.      Any amount that Grainger cancelled;

e.      Any amount that Grainger requested for recoupment;

f.      Any amounts that Grainger filed a lawsuit to cancel and/or recoup;

g.      Any amounts actually recovered; and

h.      Produce any documents establishing the foregoing.

**RESPONSE TO INTERROGATORY NO. 9:**

Grainger objects to this Interrogatory on the grounds that it is overly broad and not reasonably tailored to lead to the discovery of admissible evidence, as the identity of each Grainger employee who received incentive compensation subject to recoupment is not relevant to the allegations and defenses in the Complaint or Counterclaim.

**INTERROGATORY NO. 10:**

As to the employees who had distributions cancelled and/or recouped, identify by employee:

a.      The reason for cancellation and/or recoupment; and

b.      produce any document establishing the foregoing;

8

292780296 v2

**RESPONSE TO INTERROGATORY NO. 10:**

Grainger objects to this Interrogatory on the grounds that it is overly broad and not reasonably tailored to lead to the discovery of admissible evidence, as recoupment from other employees is not relevant to the allegations and defenses in the Complaint or Counterclaim. Subject to and without waiving these objections, no responsive information exists.

**INTERROGATORY NO. 11:**

As to any employee who received distributions, identify any arrests and with the following retails:

    a.    The date of the arrest;

    b.    The charges at the time of the arrest;

    c.    Disposition of the charges;

    d.    Produce any documents establishing your answers to the foregoing.

**RESPONSE TO INTERROGATORY NO. 11:**

Grainger objects to this Interrogatory on the grounds that it is overly broad and not reasonably tailored to lead to the discovery of admissible evidence, as arrests of other employees are not relevant to the allegations and defenses in the Complaint or Counterclaim. Subject to and without waiving these objections, no responsive information exists.

**INTERROGATORY NO. 12:**

Identify, with specificity, how Defendant and Counterclaim-Plaintiffs conduct was detrimental to Plaintiff and Counterclaim Defendant.

**RESPONSE TO INTERROGATORY NO. 12:**

Grainger objects to this Interrogatory on the grounds that the information requested is already known to Defendant through Grainger's December 2022 Demand Letter, Grainger's Complaint, Grainger's Motion to Dismiss Count I of Defendant's Counterclaim, Grainger's Motion for Summary Judgment and the parties' Joint Statement of Facts. Subject to this objection, Defendant's use of a Company-issued laptop to commit the felony offenses at issue violated Grainger's employment policies, constituted gross misconduct, and endangered Grainger's

292780296 v2

reputation.

Defendant subjected Grainger to potential criminal liability by knowingly placing in the Company's possession a computer which contained illegal pornographic content. Defendant's arrest and subsequent indictment for child pornography subjected Grainger to reputational damage as Defendant's arrest was reported by several local media outlets, including the Chicago Tribune. These articles explicitly stated that the illegal content leading to Defendant's indictment were found on a computer issued by Defendant's employer, which from a quick Google search, would confirm that Grainger was in fact the "employer" referenced therein. The Chicago Tribune article and other similar articles remain publicly posted.

Defendant's actions have also impacted Grainger's financial and operational resources. Grainger provided incentive and other compensation to Defendant that it would have otherwise withheld or cancelled had it been aware of Defendant's misconduct. Grainger has since spent significant time and resources seeking to recoup that compensation in accordance with its contractual entitlements. Grainger also spent significant time and resources assisting local law enforcement in its investigation into Defendant's actions.

**INTERROGATORY NO. 13:**

Identify, with specificity, how Defendant and Counterclaim Plaintiff's alleged conduct endangered the reputation of Plaintiff and Counterclaim Defendant.

**RESPONSE TO INTERROGATORY NO. 13:**

See response to Interrogatory No. 12.

**INTERROGATORY NO. 14:**

Identify, with specificity, how Defendant and Counterclaim Plaintiff's alleged conduct put Plaintiff and Counterclaim Defendant at risk of potential liability.

**RESPONSE TO INTERROGATORY NO. 14:**

See response to Interrogatory No. 12.

**INTERROGATORY NO. 15:**

Identify, with specificity, the time and costs associated with assisting law enforcement with

10

its criminal investigation into Defendant and Counterclaim Plaintiff's unlawful activity.

**RESPONSE TO INTERROGATORY NO. 15:**

Grainger objects to this Interrogatory on the ground that it is premature as Grainger has not fully calculated the time and costs associated with assisting law enforcement with its criminal investigation.

**INTERROGATORY NO. 16:**

Identify, with specificity, the time and costs associated with the efforts to recoup the incentive compensation awarded to and exercised by Plaintiff and Counterclaim Defendant.

**RESPONSE TO INTERROGATORY NO. 16:**

Grainger objects to this Interrogatory on the ground that it is premature as Grainger has not fully calculated the time and costs associated with the efforts to recoup the incentive compensation awarded to and exercised by Defendant.

**INTERROGATORY NO. 17:**

Identify the individual who first proposed the cancellation and/or recoup of Defendant and Counterclaim Plaintiff's incentive awards, identify when and in what format. Produce any related documentation.

**RESPONSE TO INTERROGATORY NO. 17:**

Grainger objects to this Interrogatory on the grounds that it is not reasonably calculated to lead to relevant, admissible evidence as the identity of the individual who first proposed to cancel and/or recoup Defendant's incentive awards has no relevance to the claims and defenses in this lawsuit. Subject to this objection, the initial proposal was made by Grainger's Board of Directors.

**INTERROGATORY NO. 18:**

Provide a calculation of the value of any amounts paid for by the Complaint and produce and documentation used for that calculation and identify the person or person(s) making such calculation.

**RESPONSE TO INTERROGATORY NO. 18:**

Grainger objects to this Interrogatory on the grounds that it is vague and unclear as to the

11

292780296 v2

information it seeks.

**INTERROGATORY NO. 19:**

Identify each expert whom you expect to call as an expert witness in the trial of this matter, and state for each such expert identified:

a. The substance of the facts and opinions to which the expert is expected to testify;

and

b. A summary of the grounds for each such opinion.

**RESPONSE TO INTERROGATORY NO. 19:**

Grainger objects to this Interrogatory as premature as it has not determined which expert(s), if any, it will use at trial. Grainger will supplement this response in accordance with its obligations under applicable federal and civil rules of practice.

Dated: December 1, 2023

By: */s/ Ryan H. Vann*

Ryan H. Vann
Miriam Petrillo
COOLEY LLP
110 N. Wacker Drive
Suite 4200
Chicago, IL 60606-1511
T: +1 312-881-6500
F: +1 312-881-6598
rhvann@cooley.com

*Attorneys for Plaintiff and Counterclaim
Defendant W.W. Grainger, Inc.*

12

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2023, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will automatically send notice to the

following:

Patrick Gorman
Dennis R. Favaro
Favaro & Gorman, Ltd.
9510 Turnberry Trail
Lakewood, Illinois 60014
Telephone: (815) 477-1110
dfavaro@favarogorman.com
pgorman@favarogorman.com

*Attorneys for Defendant and Counterclaim Defendant*

By: ___ */s/ Ryan H. Vann* _____

Ryan H. Vann
Miriam Petrillo
COOLEY LLP
110 N. Wacker Drive
Suite 4200
Chicago, IL 60606-1511
T: +1 312-881-6500
F: +1 312-881-6598
rhvann@cooley.com

*Attorneys for Plaintiff and Counterclaim
Defendant W.W. Grainger, Inc.*

13

292780296 v2

## CERTIFICATE OF SERVICE

I, Nicola Michel, a non-attorney, hereby certify that on January 12, 2024, I presented *Defendant / Counterclaim Plaintiff's Response to Plaintiff / Counterclaim Defendant's Motion for Summary Judgment* for filing and uploading to the CM/ECF System which will send such notification upon the following:

Mirian Petrillo
Ryan Hamilton Vann
Cooley LLP
110 North Wacker Drive
42nd Floor
Chicago, Illinois 60606
*mpetrillo@cooley.com*
*RHVann@cooley.com*

Nicola Michel

Favaro & Gorman, Ltd.
9510 Turnberry Trail
Lakewood, Illinois 60014