W.W. Grainger, Inc.,

        Plaintiff and Counterclaim
        Defendant

     v.

Scott Witz,

        Defendant and
        Counterclaim Plaintiff.

Case No. 1:23-cv-01690

Honorable Sara L. Ellis

## PLAINTIFF'S REPLY IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Plaintiff and Counterclaim Defendant, W.W. Grainger, Inc. ("Grainger" or the "Company") hereby submits the following Reply in Support of its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1. (Dkt. #35, 36).

### INTRODUCTION

In his response, Defendant Scott Witz tries but fails to raise a genuine factual issue that would defeat summary judgment. He levels allegations that are in turn irrelevant, conclusory, baseless, and vague, not to mention at odds with the joint statement of undisputed facts to which he agreed. "Definite and competent" evidence is required to defeat summary judgment, and Witz's self-serving allegations fall well short of that mark.

Witz does not and cannot dispute the material facts: (1) his incentive compensation agreements with Grainger had valid clawback provisions; (2) Grainger's Board of Directors had discretion to exercise those clawbacks in cases of executive misconduct, policy violations, or criminal conduct involving the Company; (3) Witz was charged with and then indicted for using

1

his Grainger computer to create and store child pornography, charges that also generated media coverage, (4) Grainger's Board was presented with this information, (5) in response, the Board determined via written resolution that Witz's conduct violated the clawback provisions and exercised its discretion to seek recoupment from Witz; and (6) Witz is in breach of his agreements by failing to repay the amounts he received pursuant to the agreements.

Witz's response does not call into question any of these facts, nor does Witz present any triable issue on Grainger's right to recoup the incentive compensation. Instead, Witz seeks to distract from the issues central to Grainger's motion by presenting irrelevant speculation, opinions, and legal arguments disguised as disputed "material facts." Specifically,  he claims that the Board violated the Illinois Human Rights Act (it did not); he asserts that Grainger's full Board did not consider and vote on the clawback (it did); he raises unsubstantiated and irrelevant allegations regarding other former Grainger employees, as if that somehow limited the Board's discretion in deciding that Witz's conduct triggered the clawback provisions (it does not); he claims his conduct was not a material breach (it was); and he attacks the declaration Grainger submitted in support of its motion as insufficient (it is not).

To further distract the Court, Witz attempts to recant the guilty plea he presumably made under oath in his child pornography case in Cook County. He now claims in this case that he inadvertently possessed pornographic images of his girlfriend's daughter on his Grainger-issued computer and, incredibly, denies any wrongdoing. But his recantation should be disregarded. Witz concedes that this version of his story was not before the Board when it made its decision to authorize recoupment, so it cannot support his attempt to avoid summary judgment.

In short, the only question before the Court is whether Witz breached Grainger's Acceptable Use Policy or engaged in criminal conduct involving or relating to the Company.

Because there is no dispute that he did, the plain terms of the agreement allow Grainger to recoup the payments it made to Witz. And even if Witz's unfounded and speculative allegations cause the Court to evaluate the duty of good faith and fair dealing, the only extension of that question is whether there is a genuine factual dispute over whether the Board acted arbitrarily or capriciously. There is not. Witz does not and cannot point to evidence that the Board bore him any animus or somehow singled him out. Instead, the undisputed evidence shows that the Board exercised its discretion appropriately after being apprised of the relevant facts of his criminal conduct. Accordingly, Grainger's motion for summary judgment should be granted.

### WITZ'S PURPORTED NEW MATERIAL FACTS

Witz attempts to create a factual dispute by raising five purportedly new "facts." None of those "facts" is sufficient to defeat Grainger's motion.

1. *"The Board's decision violated the Illinois Human Rights Act"*

This is not a fact. It is a legal conclusion and a meritless one at that, as set forth more fully below.

2. *"Only three of the Board's twelve directors decided to seek recoupment"*

This statement contradicts the Joint Statement of Undisputed Facts, which makes clear that Grainger's Board reached the decision to authorize recoupment and passed resolutions for such authorization. SOF ¶38.[1] In support of his statement, Witz cites only to Grainger's discovery responses, in which Grainger identified the directors who had the *most direct* knowledge of the circumstances. The identification of those directors for the limited purpose of discovery does not mean that the other directors did not also properly authorize the recoupment. Witz does not – because he cannot – dispute that the entire Board considered and approved the recoupment based

---

[1] References to the Joint Statement of Undisputed Facts (Dkt #37) shall be made as "SOF ¶__; to Witz's Response to Grainger's Motion for Summary Judgment (Dkt #47) as "Resp. __."

on the information presented to it. Indeed, the resolution by the full Board is part of the summary judgment record (SOF ¶39), and Witz offers no competent evidence suggesting the resolution was anything but a valid, duly authorized Board action.

3. *"The decision-making directors had no knowledge of the facts regarding Witz's alleged violation of law or policy, other than Witz had been indicted"*

Again, Witz disregards the Joint Statement of Undisputed Facts and his Answer.[2] As set forth above, Witz already agreed that "the Board and the Company determined that Witz's conduct, as set forth in the indictment and as described by the prosecutor in open court, triggered the various recoupment provisions in the applicable Award Agreements." SOF ⅌31, 38. Among those statements and grand jury findings, Witz already conceded that "the charges were based in part on illegal content created and/or stored on Witz's Grainger-issued laptop" and that the grand jury "indicted Witz on five felony counts, based on the same or similar conduct as alleged in the criminal complaint." SOF ⅌⅌31-33. Witz has provided no evidence to the contrary. That is because there is no dispute that the Board based its decision on the conduct underlying the criminal complaint, the Cook County indictment and the prosecutor's statements in court, all of which was sufficient to warrant clawback under the Award Agreements as a matter of law.

4. *"The Board had never tried to claw back incentive awards, despite much more egregious violations of law and policy by other executives"*

Witz asserts that Grainger has never clawed back incentive awards before deciding to seek to clawback his awards. That fact is irrelevant to whether Grainger had the right to clawback Witz's incentive awards, and it does not create a factual dispute over whether the Board acted arbitrarily. Moreover, Witz's self-serving, unsupported and vague list of purported occurrences in which

---

[2] The parties spent nearly a month reaching a stipulated Joint Statement of Undisputed Facts, including making several revisions to reach an agreed statement. Witz should not now be permitted to change course and plead contradictory facts to avoid summary judgment. If he had objections to the facts, Witz should have raised them prior to co-signing and filing the Joint Statement as required by this Court's Summary Judgment Practice Case Procedures.

former Grainger employees allegedly engaged in wrongdoing and the Company did not seek to clawback their incentive compensation is void of foundational information from which to draw the comparison Witz seeks, such as the date of the alleged conduct, the scope of misconduct at issue, the parties involved, or even whether they were subject to the same or similar award agreements. And even on Witz's unsupported assertions, none involve the conduct at issue here – felony child pornography created and stored using Company equipment. Simply put, Witz cannot point to a comparative situation in which the Board reached a different result applying the same agreements to a similar fact pattern, and therefore this purported fact is immaterial to determining whether the Board acted arbitrarily or capriciously.

5. *"The Board had no reason to believe that any alleged breach of Grainger policy was material, as required by Illinois law"*

This purported fact is similarly contradicted by the Joint Statement of Undisputed Facts and is also a legal argument (more fully addressed below). The Board evaluated Witz's criminal conduct against, *inter alia*, Grainger's Acceptable Use Policy, which prohibits employees from using Grainger technology to "[s]tore, access, transfer, download, upload, communicate, post, or create any fraudulent, embarrassing, sexually explicit, profane, obscene, intimidating, libelous, slanderous, threatening, abusive, defamatory, inappropriate, or other unlawful materials" or in a manner that "does not adhere to applicable laws … jeopardizing the reputation of Grainger and its stakeholders." SOF ¶7. Witz concedes that he was indicted based on unlawful images created and/or stored on his Grainger-issued laptop, and that multiple media outlets, including the Chicago Tribune, published articles regarding the charges. SOF ¶¶31-33.

Based on those facts, the first part of Witz's purportedly new fact is simply false – the Board had ample reason to conclude that Witz's conduct was a material violation. Witz cannot avoid summary judgment by stating his own unfounded conclusions that it was not. Indeed, it

would be hard to conjure a more material violation of the Acceptable Use Policy than using a Company computer to create and store child pornography. And in any event, none of the facts above are disputed, so the question of whether they are material is a legal one, not a factual one.

## **ARGUMENT**

### I.    **Standard for Avoiding Summary Judgment**

When facing a motion for summary judgment, the non-moving party will be successful in opposing summary judgment "only when they present definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co*., 233 F.3d 432, 437 (7th Cir. 2000) (quoting *Smith v. Severn,* 129 F.3d 419, 427 (7th Cir. 1997)). To satisfy this burden, the non-moving party must do more than create "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986); *see also Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist*. 163, 315 F.3d 817, 822 (7th Cir. 2003) ("It is well established that in order to withstand summary judgment, the non-movant must allege *specific* facts creating a genuine issue for trial and may not rely on vague, conclusory allegations.") (emphasis in original). Witz has not come forward with evidence sufficient to meet his burden.

### II.    **Grainger Did Not Violate the Illinois Human Rights Act**

The Illinois Human Rights Act ("IHRA") is irrelevant to Grainger's Motion for Summary Judgment on its contractual clawback claim. Even if it were relevant, however, Grainger did not violate the IHRA. Section 2-103 of the IHRA establishes a civil rights violation where an employer takes adverse employment action based on an arrest record alone. This prohibition is narrowly construed to preclude use of the mere fact of the arrest itself as a basis for the adverse employment

action. *See, e.g., Franklin v. City of Evanston*, 384 F.3d 838, 846 (7th Cir. 2004) (holding that termination of an employee arrested for marijuana possession did not violate Section 2-103 because the termination was based on a work rule prohibiting possession of controlled substances and not the arrest itself). Indeed, the IHRA specifically allows an employer to take adverse employment action based on facts underlying an arrest: "The prohibition against the use of an arrest record … shall not be construed to prohibit an employer … from obtaining or using other information which indicates that a person actually engaged in the conduct for which he or she was arrested." 775 Ill. Comp. Stat. 5/2-103(B).

As agreed in the Joint Statement of Undisputed Facts, the Board relied on the information in the indictment and the prosecutor's statements in open court specifically referencing the illegal content created and/or stored on Witz's Grainger-issued laptop to determine that Witz's misconduct triggered the Award Agreements' recoupment provisions. SOF ¶38. This is supported by the uncontroverted fact that the Board did not make any such determination until after Witz's criminal indictment and the prosecutor's statements – and not immediately after Witz's arrest. *See* SOF ¶¶ 11, 29, 30, 31, 32, 33, 38, 39. Therefore, Witz concedes that the Grainger Board considered the underlying facts demonstrating that Witz engaged in the conduct for which he was arrested, and not the arrest alone – a permissible basis for recoupment under the IHRA.

### III. Grainger and its Board Acted in Good Faith

Although he does not explicitly reference it as such, Witz primarily relies on the implied covenant of good faith for his defense – plucking a requirement that a decision not be "arbitrary" and "capricious" from a larger discussion of good faith performance. *American Fidelity Fire Ins. Co. v. General Ry. Signal Co.*, 184 Ill.App.3d 601, 607 (1st Dist. 1989). But the covenant of good faith does not apply here. As discussed more fully below, the Court need not apply the doctrine to

determine the contractual intent of the parties, where, as here, the intent of the Award Agreements is clear. And even if the doctrine were to apply, Grainger has met its duty of good faith and has acted in a manner consistent with the reasonable expectations of the parties.

### A. Analysis of the Covenant of Good Faith is Unnecessary Here

The obligation of good faith and fair dealing is used as an aid in construing a contract under Illinois law. *McCardle v. Peoria Sch. Dist. No. 150,* 705 F.3d 751, 755 (7th Cir. 2013). It is "essentially used to determine the intent of the parties where a contract is susceptible to two conflicting constructions." *Northern Trust Co. v. VIII South Michigan Assoc.*, 27 Ill.App.3d 355, 367, 657 N.E.2d 1095, 1104 (1st Dist. 1995). The covenant usually arises in circumstances where one party is given broad discretion in performance. *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 395 (7th Cir. 2003); *Northern Trust Co.*, 276 Ill.App.3d at 367. Where the intent of the parties is not clear, the covenant requires the parties to act reasonably and not arbitrarily or in a manner inconsistent with reasonable expectations. *Cromeens, Holloman, Sibert, Inc.*, 349 F.3d at 395; *Northern Trust Co.*, 27 Ill.App.3d at 367. Parties to a contract, however, are entitled to enforce the terms of the contract to the letter and an implied covenant of good faith cannot overrule or modify the express terms of a contract. *Northern Trust Co.*, 276 Ill.App.3d at 367. In other words, a party "cannot be held to have breached the covenant of good faith and fair dealing for simply enforcing the contracts as written." *Cromeens, Holloman, Sibert, Inc.*, 349 F.3d at 396.

Here, the contracts at issue are not susceptible to conflicting constructions and are being enforced by Grainger as written. Under each, the Company is entitled to exercise recoupment of Witz's incentive compensation based on: (1) Witz's criminal conduct involving or relating to the Company; or (2) Witz's misconduct. As such, the "arbitrary and capricious" standard should not apply. The applicable contractual provisions are as follows:

- **2015 Incentive Plan**: The Plan allows for various award agreements to make awards subject to forfeiture upon the occurrence of certain events, such as violation of material Company policies or other conduct by the Participant that is detrimental to the business or reputation of the Company. SOF ₱ 17.

- **2016 & 2017 Award Agreements**: The Company is authorized to exercise recoupment rights subject to the Board's discretion where an "Executive has committed fraud against the Company or has been engaged in any criminal conduct that involves or is related to the Company" or "if [the] Executive engages in misconduct." SOF ₱₱ 20-23.

- **2018 Award Agreement**: The Company has the same rights as the prior agreements, but also in the event of "any other conduct that violates Company policy." SOF ₱ 24.

- **2019, 2020 and 2021 Award Agreements**: In addition to the rights above, recoupment is allowed where the Executive's conduct "causes or is discovered to have caused, any loss, damage, injury or other endangerment to the Company's property or reputation." SOF ₱₱ 25-26.

Witz used a Company computer to commit felony child pornography – triggering both recoupment prongs of the 2016-2017 Agreements (in addition to the more specific prongs added in the 2018-2021 Award Agreements). Had Witz used a non-Company asset, perhaps he could claim that the crime did not involve or relate to the Company, but that is not the case here. And Witz's actions are undoubtedly misconduct under the Grainger Acceptable Use Policy, which prohibits precisely the conduct in which he engaged. Witz acknowledged the Acceptable Use Policy every time he logged on to his computer. SOF ₱8. Accordingly, there can be no "conflicting construction" requiring application of the covenant of good faith and fair dealing. Witz knew what the agreements allowed and what the policy prohibited and engaged in criminal misconduct using a Grainger computer nonetheless. Grainger is merely enforcing the contracts as written.

## B. Even if the Duty of Good Faith and Fair Dealing Applies, Grainger Complied

Even assuming the Court determines that the duty of good faith, and its "arbitrary and capricious" and "reasonable expectations" standards, is necessary to evaluate the Award Agreements, Witz has still failed to raise a genuine factual issue as to whether the Board acted arbitrarily or capriciously, or outside of the reasonable expectations of the parties. Witz argues: (1)

that "there had been so many previous violations by executives which were worse than whatever Grainger, on December 14, 2022, had reason to believe Witz did[;]" (2) Grainger has not shown that Witz's violations could have any effect on its share price; and (3) a subcommittee of Grainger's Board made a rushed decision based on only some of the information surrounding Witz's criminal conduct. Resp. 8-9. Notably, Witz has also failed to set forth any evidence that he had a reasonable expectation of a different result. His only argument is that he "had no reason to believe that Grainger would exercise its clawback nuclear option because his ex-girlfriend had weaponized the legal system." Resp. 8-9.

### i. The Alleged "Previous Violations" Are Irrelevant, Vague, and Conclusory

Witz submits an affidavit that purports to set forth other alleged former executive misconduct in an attempt to create a factual dispute as to whether the Board acted arbitrarily and capriciously when it authorized recoupment of his incentive compensation. But that affidavit contains nothing more than Witz's own purported recollection of incidents where the Company could have sought recoupment of an employee's compensation but chose not to. This is not definite and competent evidence of the type needed to defeat summary judgment.

Nor is it relevant. Witz's list fails to draw the comparison he seeks, as none of the incidents involve allegations involving the use of Company property to record and store child pornography. Nor does Witz establish that those executives were subject to the same award agreements or policies at issue here or that the Grainger Board was even aware of such alleged conduct (Witz himself was not on the Board and thus lacks first-hand knowledge of the Board's involvement with any of these alleged instances). As shown in the summary judgment record, the applicable clawback triggers have evolved over time (SOF ¶¶ 20-26), rendering a comparison between Witz and the undated alleged conduct of other executives fruitless. And in any event, unsupported rumor

and innuendo cannot be the basis for creating a factual dispute sufficient to deny summary judgment. *See Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) ("inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion").

### ii. The Impact of Witz's Crime on Grainger's Share Price is Irrelevant

Witz further claims that Grainger's Board acted arbitrarily because the conduct triggering the clawback did not affect Grainger's share price. Resp. at 8. Nothing in the Award Agreements or Acceptable Use Policy suggests that impact on share price is a condition for exercising the clawback provision. It appears that Witz is arguing that Grainger was not *required* to claw back his equity based on SEC rules and DOJ guidance on clawbacks for executive crimes issued shortly before the Board made its decision.[3] Those rules are irrelevant here.

### iii. The Board Authorization Process is Irrelevant

In yet another attempt to claim the Board acted arbitrarily in authorizing recoupment, Witz seizes on Grainger's discovery responses identifying three Board members (among others) with relevant knowledge regarding "information, facts or circumstances in this case:" (1) its lead independent director; (2) the chair of the Board's compensation committee; and (3) the Chairman of the Board. Witz claims that Grainger's discovery response somehow means that the full Board did not authorize recoupment. Again, however, Witz's claim runs counter to the Joint Statement of Undisputed Facts and the Board resolutions, which are part of the summary judgment record. The Board's delegation of executive compensation matters to a subcommittee that can make recommendations to the full Board does not suggest arbitrary or capricious behavior and is instead in line with routine corporate practice.

---

[3] *See, e.g.*, 17 C.F.R. § 229, 232, 240, 249, 270, 274 (2022); *and* Press Release, U.S. Department of Justice, Deputy Attorney General Lisa O. Monaco Delivers Remarks on Corporate Criminal Enforcement (Sep. 15, 2022), https://www.justice.gov/opa/speech/deputy-attorney-general-lisa-o-monaco-delivers-remarks-corporate-criminal-enforcement.

Witz further alleges that the Board made a "rushed, knee-jerk decision based on only *some* information that Witz had been indicted." Resp. at 9 (emphasis in original). But again, the undisputed evidence tells the opposite story, namely that: the Board knew that law enforcement requested Witz's Company-issued laptop from Grainger on August 21, 2021 (SOF ¶ 29); that law enforcement had filed a criminal complaint against Witz on August 10, 2022 (SOF ¶¶ 30, 38); and that Witz was indicted on September 22, 2022 (SOF ¶¶ 30, 32). Based on all of this information, the Board authorized recoupment on December 14, 2022 (SOF ¶¶38-40). At a minimum, the Board and the Company had several months to consider Witz's circumstances and conduct. Nothing supports the naked inference that the Board's decision was "rushed" or "knee-jerk," and Witz's assertions are mere speculation that cannot defeat summary judgment. *Dorsey*, 507 F.3d at 627.

## IV.    Witz's Materiality Argument is Misplaced

Witz attempts to raise a factual dispute over whether his admitted breach of Company policy – i.e. the possession of child pornography on his Grainger-issued computer – was "material." Resp. 9-10.  But the question is a legal, rather than a factual determination given that the facts surrounding the breach are not in dispute. And the cases Witz cites in support of this attempt are inapposite as they apply to commercial terms involving substantial negotiation, history of performance and commercial custom requiring fact weighing not necessary in this case.[4] Here, Witz's conduct, which is not in dispute, violates the entire purpose of the Acceptable Use Policy.

---

[4] *Sahadi v. Continental Illinois Nat. Bank and Trust Co. of Chicago*, 706 F.2d 193 (1983) (whether breach of a payment date provision in a relationship with a history of late payments was material); *William Blair & Co., LLC v. FI Liquidation Corp.*, 358 Ill.App.3d 324 (1st Dist. 2005) (whether breach of the indefinite phrase "substantive discussions" requiring extrinsic evidence to evaluate was material); and *Commonwealth Edison Co. v. Elston Ave. Props., LLC* 2017 IL App (1st) 153228 (whether substitution of sand instead of concrete in construction was a material breach).

## V. Grainger's Supporting Evidence is Admissible and Overwhelming

Witz claims that denial is warranted because some record facts agreed to by the parties rely on an affidavit provided by Grainger's SVP and Chief Legal Officer ("CLO"), which Witz now claims contains inadmissible hearsay and lacks proper foundation.[5]

Witz's objections fall flat. The CLO's affidavit supports these joint facts (the rest are supported by Witz's Answer):

- Witz electronically acknowledged receipt of Award Agreements. SOF ¶15;

- The compensation committee reviews and approves Award Agreements. SOF ¶19;

- The Award Agreements allow recoupment of sale proceeds. SOF ¶27;

- The amounts of the awards Witz received. SOF ¶28, 40; and

- Authenticating and quoting the December 14, 2022 Board resolutions. SOF ¶39, 40

The CLO provides competent foundation, personal knowledge and authentication for each of those facts. Namely, she explains that her role involves review and knowledge of all of the documents, policies and programs referenced, including participation in Board meetings (Decl. ¶3);[6] she is aware of Witz's awards and agreements (Decl. ¶¶9, 10); she is aware of the December 14, 2022, Board meeting and the resolutions passed; (Decl. ¶11); she is aware of amounts the Board authorized for recovery from Witz (Decl. ¶14); and authenticates the associated documents (Decl. 11-14). She has established personal knowledge and foundation for describing and authenticating Grainger procedures and records, which is all that is necessary.

---

[5] The parties agreed to file the facts as a joint statement in accordance with this Court's Summary Judgment Practice Case Procedures. Grainger provided Witz's counsel with a copy of the affidavit during negotiations of the joint statement. At no time did Witz raise any objection to admissibility when agreeing to the facts supported by the affidavit.

[6] References to the Declaration of Nancy Bernardinelli-Krantz, dated October 27, 2023 (Dkt #36-9), shall be made as "(Decl. ¶__)."

Finally, and decisively, Witz has separately admitted to the same content he challenges in the affidavit. Witz devotes an entire page to attacking one affidavit paragraph – the information presented to the Board in evaluating the clawback. Resp. 6. The parties do not cite that paragraph anywhere in the joint facts. Rather, the information the Board considered in reaching the resolutions relies on Witz's own Answer (Dkt #10): "In December 2022, less than three months after Witz was indicted, the Board and the Company determined that Witz's conduct, as set forth in the indictment and as described by a prosecutor in open court, triggered the various recoupment provisions in the applicable Award Agreements." SOF ¶38 (citing Answer ¶64). The CLO's affidavit merely authenticates and introduces the confirmatory Board resolutions and amounts at issue (which awards Witz admits he received and amounts he does not contest). But even if the Court excluded the Board resolutions, the document itself is not necessary for awarding summary judgment because Witz has already admitted the substance in his pleadings.

## VI. Witz's Recant of His Guilty Plea Should be Rejected

In connection with his response, Witz signed an affidavit purporting to recant his felony child pornography guilty plea, rationalize his conduct, and "deny any wrongdoing." Witz's under-oath recantation of his under-oath guilty plea is as troubling as it is irrelevant. And his brief goes so far as to argue that the felony criminal conduct to which he pled guilty was "laudatory." The Court should reject Witz's affidavit for what it is: an irrelevant sideshow. Witz concedes that the record is void of any evidence the Board knew of the alleged facts in his affidavit but claims that "[h]ad the Board taken the time to investigate they might have learned that the image which resulted in Witz's subsequent plea agreement was the result of his attempt to protect a young woman whom he considered his daughter…" Resp. at 4. Witz admits that Grainger gave him notice of its intention to recoup his equity awards on December 15, 2022 (the day after the Board's

decision authorizing recoupment), setting forth the various bases upon which the Company was entitled to recoupment. SOF ¶¶ 39-42. Grainger waited until March 17, 2023, to file the Complaint. SOF ¶ 43. Grainger and Witz participated in this Court's mandatory meet and confer process prior to Grainger filing its motion for summary judgment ("during which time the opposing party should advise the moving party of factual matter or legal authority that it believes would defeat the motion"), and the parties worked together for nearly a month to reach the Joint Statement of Undisputed Facts. Witz did not provide any such "innocent explanation" throughout those numerous opportunities. He cannot avoid summary judgment by inventing a new story at this stage. There is no dispute that the Board exercised its discretion appropriately in relying on credible evidence in making its determination about Witz's conduct.

## CONCLUSION

For the reasons stated above, Plaintiff and Counterclaim Defendant respectfully requests that this Court grant its Motion for Summary Judgment and enter judgment in its favor.


Dated: February 2, 2024

By:   /s/ Ryan H. Vann

Ryan H. Vann
Miriam Petrillo
COOLEY LLP
110 N. Wacker Drive
Suite 4200
Chicago, IL 60606-1511
T: +1 312-881-6500
F: +1 312-881-6598
rhvann@cooley.com

*Attorneys for Plaintiff and Counterclaim
Defendant W.W. Grainger, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2024, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which will automatically send notice to the following:

Patrick Gorman
Dennis R. Favaro
Favaro & Gorman, Ltd.
9510 Turnberry Trail
Lakewood, Illinois 60014
Telephone: (815) 477-1110
dfavaro@favarogorman.com
pgorman@favarogorman.com

*Attorneys for Defendant and Counterclaim Defendant*

By:  /s/ Ryan H. Vann
Ryan H. Vann
Miriam Petrillo
COOLEY LLP
110 N. Wacker Drive
Suite 4200
Chicago, IL 60606-1511
T: +1 312-881-6500
F: +1 312-881-6598
rhvann@cooley.com

*Attorneys for Plaintiff and Counterclaim
Defendant W.W. Grainger, Inc.*