# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| W.W. GRAINGER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 23 C 1690 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| SCOTT WITZ, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff W.W. Grainger, Inc. ("Grainger") filed this action to recoup certain incentive compensation it had awarded to its former employee, Defendant Scott Witz, based on its determination that Witz had used a Grainger-issued laptop to create and store illegal content. Grainger brings claims for recoupment, breach of fiduciary duty, and fraudulent concealment. Witz filed a counterclaim, alleging that Grainger violated Section 2-103 of the Illinois Human Rights Act (the "IHRA"), failed to pay him certain compensation, and violated the Illinois Wage Payment and Collection Act. Grainger has now moved for summary judgment on its complaint pursuant to Federal Rule of Civil Procedure 56.[1] Because no genuine issue of fact exists as to Grainger's entitlement to recoup Witz's incentive compensation, the Court enters judgment for Grainger on its recoupment claim. But because Grainger has not sufficiently supported its request for summary judgment on the remaining two claims, the Court denies Grainger's motion without prejudice to renewal after the close of discovery.

---

[1] Neither party seeks summary judgment on Witz's counterclaim at this time.

## BACKGROUND[2]

### I.    Witz's Employment and Award Agreements

Witz worked for Grainger from March 1, 2001 through July 31, 2021.  He served as Grainger's Vice President, Total Rewards from 2008 until his employment with Grainger ended in 2021.  Throughout his employment, Witz received incentive compensation in the form of long-term equity and cash incentive awards.  After 2015, Grainger granted these awards to Witz and other employees in accordance with the shareholder-approved Grainger 2015 Incentive Plan (the "2015 Plan") and specific Award Agreements for each year in which he received an award. The 2015 Plan provided that Grainger could recoup the awards under circumstances set forth in an award agreement by the Compensation Committee of the Board of Directors, which could include, as relevant here, "violation of material Company, Affiliate, and/or Subsidiary policies, . . . or other conduct by the Participant that is detrimental to the business or reputation of the Company, its Affiliates, and/or its Subsidiaries."  Doc. 37 ¶ 17.

Witz's 2016 and 2017 Award Agreements allowed for recoupment where an executive committed fraud against Grainger, engaged in criminal conduct involving or related to Grainger, or otherwise engaged in misconduct.  The 2018 Award Agreement added that "any other conduct that violates Company policy" could trigger recoupment.  *Id.* ¶ 24.  The 2019, 2020, and 2021 Award Agreements additionally provided that Grainger could recoup incentive compensation where the executive "causes or is discovered to have caused, any loss, damage, injury or other endangerment to the Company's property or reputation."  Doc. 36-6 at 4; Doc. 37 ¶ 26.  All the relevant Award Agreements gave Grainger's Board "sole discretion in determining whether the

---

[2] The Court derives the facts in this section from the Joint Statement of Undisputed Material Facts and Witz's additional facts included in his response brief.  The Court has included in this background section only those portions of the statements that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment.  The Court takes all facts in the light most favorable to Witz, the non-movant.

Executive's conduct was in compliance with applicable law or Company policy and the extent to which the Company will seek recovery of the Incentive Compensation notwithstanding any other remedies available to the Company." *Id.* ¶¶ 22, 24, 26. The Award Agreements further allowed Grainger to recoup not only the incentive compensation itself but also any gain Witz realized upon the sale of the shares he received as incentive compensation.

Upon receiving each award, Witz electronically acknowledged receipt of the applicable Award Agreement. Between January 1, 2020 and April 1, 2022, Witz vested in or exercised approximately $1,346,798.41 in equity-based awards and also received approximately $295,782 in cash incentive payments pursuant to Grainger's Management Incentive Program.

## II. Grainger's Technology Policies

Throughout his employment, Grainger provided Witz with a company-issued laptop, which he returned when his employment with Grainger ended. Grainger's Personal Computer Policy provided that all company-issued devices were company assets and Grainger's sole property. Grainger also had an Acceptable Use Policy, implemented on or before 2016, that governed employees' use of Grainger technology and devices. Specifically, it prohibited employees from using such devices to "[s]tore, access, transfer, download, upload, communicate, post, or create any fraudulent, harassing, embarrassing, sexually explicit, profane, obscene, intimidating, libelous, slanderous, threatening, abusive, defamatory, inappropriate, or otherwise unlawful materials." *Id.* ¶ 7. It also prohibited the use of Grainger's devices in a way that did "not adhere to applicable laws . . . jeopardizing the reputation of Grainger and its stakeholders." *Id.* Witz received a notice each time he logged into his Grainger-issued laptop that his "access to, and use of, Grainger's systems [was] governed by the Grainger acceptable use policy" and that, by proceeding, he "agree[d] to be bound by Grainger's policies." *Id.* ¶ 8.

3

### III.    Witz's Criminal Activity

After Witz left Grainger's employ, Grainger received a request from local law enforcement for Witz's Grainger-issued laptop.  Grainger provided the laptop to local law enforcement on August 12, 2021.  A year later, on August 10, 2022, the state charged Witz by criminal complaint with felony offenses.  According to law enforcement and the state prosecutor's statements at Witz's bond hearing, the charges arose from illegal content he created and/or stored on his company-issued laptop.  Local media outlets, including the Chicago Tribune, reported on the charges, indicating that Witz stored the illegal content on a computer his employer had issued to him.  A Cook County grand jury returned a five-count indictment against Witz on September 22, 2022.  Witz initially entered a not guilty plea.  He ultimately pleaded guilty to one count of possession of child pornography, a Class 3 felony, on September 18, 2023. The court sentenced Witz to thirty months' probation and imposed a $1,374 fine.

### IV.    Recoupment Action

In December 2022, the Board determined that Witz's conduct, as set forth in the indictment and described by the prosecutor in open court, triggered the recoupment provisions in Witz's Award Agreements.  Specifically, on December 14, 2022, based on the Board Compensation Committee's recommendation, the Board passed a resolution authorizing the recoupment of certain of Witz's incentive compensation, also noting that Grainger had cancelled Witz's equity awards set to vest in 2023 and 2024.  The resolution provided as the basis for recoupment the fact that, "as described to the Board, Mr. Witz's misconduct, among other things, violate[d] the Company's prohibitions on the use of Company-issued electronic devices to store or create any materials that are sexually explicit, obscene, inappropriate, or otherwise unlawful, involves allegations of criminality and is conduct that could cause harm to the Company's

reputation given the seriousness of the charged crimes and Mr. Witz's tenure and senior role at the Company." *Id.* ¶ 39.

On December 15, 2022, Grainger notified Witz of its intent to recoup the incentive compensation that he had received and exercised or that had vested after January 1, 2020. The letter also identified Grainger's bases for seeking recoupment. On February 22, 2023, Witz's counsel responded to Grainger that he would not agree to repay any of the compensation for which Grainger sought recoupment. On March 17, 2023, Grainger instituted this action, seeking enforcement of the recoupment provisions in the relevant Award Agreements. Specifically, Grainger seeks the return of $1,389,789 in incentive awards and $292,692 in cash incentive payments.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627

(7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving

party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719

F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue

of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th

Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by

admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of

Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

## ANALYSIS

### I.      Claim for Enforcement of the Award Agreements' Recoupment Provisions

Grainger argues that the undisputed facts entitle it to judgment on its request for

recoupment pursuant to the 2015 Plan and applicable Award Agreements. Under Illinois law, a

breach of contract claim consists of four elements: (1) the existence of a contract,

(2) performance by the plaintiff, (3) breach by the defendant, and (4) injury to the plaintiff.

*Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192, 199 (1999).

Witz acknowledges that, pursuant to the Award Agreements, Grainger has the right to

recover his incentive compensation for certain misconduct, including conduct that violated

company policy and criminal conduct involving or relating to Grainger. Witz attempts to explain

away the conduct underlying his conviction, claiming that he never intended to capture any

pornographic images on his Grainger-issued laptop. But his allegedly innocent explanation does

not change the fact that he has acknowledged facing criminal charges based in part on illegal

content he created and/or stored on his work laptop. He further has agreed that Grainger's Board

authorized recoupment of certain incentive compensation under the Award Agreements based on

the fact that his use of a Grainger-issued laptop to allegedly commit five felonies "violate[d] the

6

Company's prohibitions on the use of Company-issued electronic devices to store or create any materials that are sexually explicit, obscene, inappropriate, or otherwise unlawful, involve[d] allegations of criminality and [was] conduct that could cause harm to the Company's reputation given the seriousness of the charged crimes and Mr. Witz's tenure and senior role at the Company." Doc. 37 ¶ 39. Finally, Witz has acknowledged that he has not repaid the amounts Grainger seeks to recoup.

Although Witz's admissions establish the elements of Grainger's breach of contract claim, Witz argues that Grainger cannot recover because the Board abused its discretion in seeking to recoup the incentive compensation from him. This amounts to an argument that the Board violated the implied covenant of good faith and fair dealing. The covenant of good faith applies where "the contract vested the opposing party with discretion in performing an obligation under the contract and the opposing party exercised that discretion in bad faith, unreasonably, or in a manner inconsistent with the reasonable expectations of the parties." *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 792 (N.D. Ill. 2010). The covenant of good faith, however, "cannot override an express term of a contract." *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 396 (7th Cir. 2003).

The parties disagree as to whether the covenant of good faith applies in this case, where the Award Agreements vested the Board with "sole discretion" in determining whether misconduct occurred and whether to pursue recoupment. Doc. 37 ¶¶ 22, 24, 26. "When one party's contractual obligation is 'contingent upon a condition particularly within the power of that party,' the controlling party's discretion in bringing about the condition is limited by the implied covenant of good faith." *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 675 (7th Cir. 2013) (Darrow, J., concurring) (quoting *Dayan v. McDonald's Corp.*, 125 Ill. App. 3d 972, 990

7

(1984)).[3]  Some courts have applied the covenant of good faith to all cases in which one party

has any, even absolute, discretion.  *See Acheron Med. Supply, LLC v. Cook Med. Inc.*, 958 F.3d

637, 643–44 (7th Cir. 2020) ("[W]here a contract grants a party discretion in performing its

obligations, this implied duty requires that party to exercise its discretion in good faith, rather

than take opportunistic advantage of the other party."); *Ragan v. BP Prod. N. Am., Inc.*, No. 1:17

C 9208, 2019 WL 6309927, at *11 (N.D. Ill. Nov. 25, 2019) ("The fact that contractual

discretion is express does not limit the application of the covenant."); *McCleary v. Wells Fargo

Sec., L.L.C.*, 2015 IL App (1st) 141287, ¶ 21 ("An employer that exercised its contractual

discretion in a manner inconsistent with the reasonable expectations of the parties to deprive an

employee of reasonably anticipated benefits may have acted in bad faith.").  Other courts have

instead concluded that where no ambiguity exists and a contract provides one party with absolute

discretion, the covenant of good faith plays no role in determining whether a breach occurred.

*See Ocean Tomo, LLC v. PatentRatings, LLC*, 262 F. Supp. 3d 553, 557–58 (N.D. Ill. 2017)

(covenant of good faith did not impose a limitation on a board's "sole discretion" to make a

determination where the provision granting the board discretion was unambiguous); *Lakeview

Pharmacy of Racine, Inc. v. Catamaran Corp.*, No. CV 3:15-0290, 2015 WL 8331908, at *6–7

(M.D. Pa. Dec. 9, 2015) ("Because the covenant of good faith and fair dealing is a tool of

contract construction for determining the intent of contracting parties, a contract term that

*explicitly* grants discretion to a party does not invoke application of the covenant unless such

term is ambiguous or open to more than one interpretation.  An unambiguous, explicit term is

presumed to be within contemplation of parties to the contract and within the *reasonable

expectations* of the parties. As a result, such discretion does not invoke the covenant, even if the

---

[3] Judge Darrow's opinion addressing the covenant of good faith serves as the majority opinion on that issue.  *See Wilson*, 729 F.3d at 671.

term creates an unfavorable result for one of the parties." (citations omitted) (applying Illinois law)); *see also Wilson*, 729 F.3d at 689 (Wood., J., dissenting in part) ("Where there is an express reservation of rights to terminate or amend at any time and for any reason, as there is in our case, there is no baseline against which to find termination arbitrary, capricious, or inconsistent with expectations.  The disappointed party has no right to expect non-arbitrary modification or termination, because the contract expressly declines to condition those possibilities on good cause or anything else.").

The Court need not definitively resolve whether the covenant of good faith applies in this situation.  Even assuming that the covenant of good faith limited the Board's discretion, Witz has not created a question of fact as to whether the Board violated the covenant.  Because the Award Agreements provided that the Board could authorize recoupment of Witz's incentive compensation based on the Board's determination of whether Witz complied with applicable laws and Grainger policies, the parties expressly contemplated the situation at hand, an attempt at recoupment based on Witz's violation of the Acceptable Use Policy.  In other words, Grainger did not act in bad faith when it exercised its discretion to recoup Witz's incentive compensation for violating a company policy.  *See Cont'l Mobile Tel. Co. v. Chicago SMSA Ltd. P'ship*, 225 Ill. App. 3d 317, 324 (1992) (no breach of the covenant of good faith where the contract gave the defendant sole discretion to raise rates, meaning the parties contemplated such actions); *see also Knezovic v. Urb. P'ship Bank*, 589 B.R. 351, 359 (N.D. Ill. 2018) ("[T]he fact that the Note commits the interest rate to the lender's sole discretion compels the conclusion that the parties knew UPB could decline to adjust its interest rate at any time, 'thereby negating any inference that defendant's actions were outside the contemplation of the parties and could be characterized as a breach of good faith.'" (quoting *Cont'l Mobile Tel. Co.*, 225 Ill. App. 3d at 324)); *cf. Ragan*,

2019 WL 6309927, at *12–13 (factual question existed as to whether the defendant breached the covenant of good faith where "substantial factual uncertainty" existed as to whether the plaintiff's termination fell within the contract's meaning of termination for cause).

Witz's arguments to the contrary are red herrings. He first argues that the Board acted in bad faith because its decision to recoup benefits violated the IHRA, which prohibits discrimination based on an arrest record. *See* 775 Ill. Comp. Stat. 5/2-103 ("[I]t is a civil rights violation for any employer . . . to inquire into or to use an arrest record. . . as a basis to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment.").[4] But Witz does not explain why an alleged violation of the IHRA would indicate bad faith. Moreover, the IHRA does not prohibit an employer "from obtaining or using other information which indicates that a person actually engaged in the conduct for which he or she was arrested." 775 Ill. Comp. Stat. 5/2-103(B). Here, Witz has agreed that the Board relied on the information contained in the indictment, as well as the prosecutor's statements in open court, in authorizing recoupment, undermining any claim that Grainger violated the IHRA and based its recoupment decision solely on the fact of his arrest.[5]

---

[4] The IHRA defines an arrest record, for purposes of Section 2-103, as "(1) an arrest not leading to a conviction; (2) a juvenile record; or (3) criminal history record information ordered expunged, sealed, or impounded under Section 5.2 of the Criminal Identification Act." 775 Ill. Comp. Stat. 5/1-103(B-5).

[5] Although Witz agreed in the Joint Statement of Facts that the Board determined that his misconduct violated the Acceptable Use Policy, involved allegations of criminality, and amounted to conduct that could cause harm to Grainger's reputation, he argues in his response that the Board did not have sufficient information to make such a decision because Grainger only sets forth inadmissible hearsay that also lacks the proper foundation to support this fact. Witz cannot now attempt to undo his agreement to this fact, however, where Witz made a binding judicial admission when he agreed to this allegation in his answer. *See Crest Hill Land Dev., LLC v. City of Joliet*, 396 F.3d 801, 805 (7th Cir. 2005) (admission in answer to complaint "constitutes a binding judicial admission" and "has the effect of withdrawing the question . . . from contention"). Additionally, Grainger has provided the Board resolution and a declaration from Grainger's senior vice president and chief legal officer, Nancy Berardinelli-Krantz, attesting to the authenticity of the resolution and the foundation for her knowledge related to the resolution. To the

Next, Witz argues that only three of Grainger's twelve directors voted on the resolution to recoup Witz's incentive compensation, extrapolating this conclusion from Grainger's interrogatory answers that identified only three directors with knowledge of the facts related to this case. Even crediting the fact that Grainger only identified three directors in its interrogatories to mean that only three directors voted to authorize the resolution, Witz has not provided any basis for a jury to infer that the Board's resolution did not comply with Board procedures and so was made in bad faith or contrary to the parties' expectations.

Witz also argues that the Board acted in bad faith because it did not seek to recoup incentive compensation from former employees who engaged in more serious violations of the law or company policy. While Witz provides examples of these other employees, he does not name them or provide additional details regarding the dates of the alleged violations or the relevant recoupment provisions for these individuals. Even had he done so, it would not matter. The parties agreed in the Award Agreements that the Board had sole discretion in determining the extent to which it would seek recovery of any incentive compensation, meaning that Witz cannot argue that he did not contemplate the Board pursuing recoupment if he violated a policy, regardless of its allegedly selective enforcement of the provision.

Finally, Witz contends that a question exists as to the materiality of Witz's alleged violation of the Acceptable Use Policy. But again, the parties did not include a materiality requirement in the recoupment provisions of the Award Agreements. Instead, by giving the Board sole discretion, the parties essentially agreed that the Board could pursue recoupment for even the slightest violations. Similarly, along these lines, the fact that Grainger did not have to

---

extent Witz challenges another paragraph in Berardinelli-Krantz's declaration describing the information presented to the Board on December 14, 2022, *see* Doc. 36-9 ¶ 12, Grainger has not relied on that paragraph to support its request for summary judgment and so the Court need not address Witz's hearsay and foundation objections to that paragraph.

pursue recoupment under the law or that Grainger has not shown that Witz's actions could have had an effect on its share price has no relevance to whether Grainger acted in good faith in accordance with the parties' reasonable expectations, where the Award Agreements did not include such requirements and instead left the decision as to recoupment to the Board's discretion.  In other words, Witz cannot show that Grainger acted in bad faith where he agreed that Grainger could pursue recoupment for any of the circumstances outlined in the Award Agreements' recoupment provisions, regardless of their materiality, legality, effect on share prices, or otherwise.  *See Wilson v. Career Educ. Corp.*, 844 F.3d 686, 691 (7th Cir. 2016) ("[A]n employer does not act in bad faith when acting in furtherance of legitimate corporate interests that would reasonably have been in the contemplation of the parties."); *Roan v. Keck, Mahin & Cate*, 962 F.2d 10 (Table), 1992 WL 104789, at *6 (7th Cir. 1992) ("The extreme breadth of [a contract providing a party with "*unlimited*"] discretion imposes a similar breadth upon 'the reasonable expectations of the parties' and concomitantly reduces the scope of judicial review in this regard virtually to zero.").

Because Witz has failed to raise a material question of fact as to whether he breached the Award Agreements by failing to repay his incentive compensation and whether the Board violated the covenant of good faith in seeking recoupment, the Court grants summary judgment for Grainger on its request for recoupment.

## II.     Breach of Fiduciary Duty and Fraudulent Concealment Claims

Grainger also seeks summary judgment on its claims that Witz breached his fiduciary duty and fraudulently concealed his conduct from Grainger.  But it makes only cursory arguments to support this request, failing to set forth the entirety of the elements required to prove a fraudulent concealment claim or provide supporting caselaw for its argument that Witz's

12

conduct in using his Grainger-issued laptop to engage in illegal conduct "necessarily constitute[d] a breach of Witz's fiduciary duty to Grainger." Doc. 36 at 9; *see Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010) (burden of defeating summary judgment did not shift to non-movant where movants did not cite the "basic facts and law which, in their view, warranted summary judgment on this claim"); *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006) ("An advocate's job is to make it easy for the court to rule in his client's favor[.]"). Further, Grainger did not include any arguments in its reply addressing these claims, focusing only on its request for recoupment. Because the Court does not have sufficient facts or supporting caselaw before it to determine whether Witz breached his fiduciary duty or engaged in fraudulent concealment, especially given that the parties have not completed discovery and the Court need not conduct the parties' legal research for them, the Court denies Grainger's request for summary judgment on these claims. *See Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."); *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008) ("It is not the court's responsibility to research the law and construct the parties' arguments for them."). To the extent Grainger continues to pursue these claims, Grainger may renew its request for summary judgment at the close of discovery, marshaling additional evidence and proper legal support.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Grainger's motion for summary judgment [35]. The Court enters judgment for Grainger on its request for enforcement of the incentive recoupment provisions of the Award Agreements (Count I of the complaint).

Dated: May 13, 2024

_____
SARA L. ELLIS
United States District Judge